The Calhoun County Department of Human Resources ("DHR") filed a petition to terminate the parental rights of D.H. ("the mother") as to her five children; M.A.H. is the father of one of the children, M.A.H., Jr., but is not the father of the other children. DHR filed a petition to terminate his parental rights as to M.A.H., Jr. Following a one-day hearing, the trial court terminated the mother's parental rights as to all five children. The trial court also terminated the parental rights *Page 314 
of M.A.H. as to M.A.H., Jr.; the older four children have never been legitimated.
Only the mother appeals; she argues (1) that there is not clear and convincing evidence to support the trial court's finding that the children are dependent and (2) that the trial court did not properly evaluate viable alternatives to termination of her parental rights before rejecting those alternatives.
A nonparent who seeks to terminate a parent's parental rights must prove by clear and convincing evidence that the child is dependent and that there are no viable alternatives to terminating the parents' parental rights. Ex parte Beasley, 564 So.2d 950 (Ala. 1990).
Section 26-18-7(a) states in relevant part:
 "If the court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents. In determining whether or not the parents are unable or unwilling to discharge their responsibilities to and for the child, the court shall consider, and in cases of voluntary relinquishment of parental rights may consider, but not be limited to, the following:
 "(1) That the parents have abandoned the child, provided that in such cases, proof shall not be required of reasonable efforts to prevent removal or reunite the child with the parents.
 "(2) Emotional illness, mental illness or mental deficiency of the parent, or excessive use of alcohol or controlled substances, of such duration or nature as to render the parent unable to care for needs of the child.
 "(3) That the parent has tortured, abused, cruelly beaten, or otherwise maltreated the child. . . .
"(4) Conviction of and imprisonment for a felony.
 "(5) Unexplained serious physical injury to the child under such circumstances as would indicate that such injuries resulted from the intentional conduct or willful neglect of the parent.
 "(6) That reasonable efforts by the [DHR]. . . leading toward the rehabilitation of the parents have failed.
". . . .
 "(8) That parental rights to a sibling of the child have been involuntarily terminated."
Section 26-18-7(b) further provides that if the child is not in the custody of the parents, the juvenile court may consider whether the parents are providing monetary support for the child, whether they are regularly exercising visitation with the child, and whether they are adjusting their "circumstances to meet the needs of the child."
We first conclude that the record contains clear and convincing evidence that the children are dependent. DHR began its involvement with the family in May 2000 after the mother, the father, and the five children along with another family of four had been involved in a car accident. The driver and the 10 passengers were in a two-door car. The four adults were legally intoxicated, and the seven children were not wearing seat restraints; the driver of the other car was killed. Two of the mother's children were hospitalized and *Page 315 
made a full recovery. The five children were then taken into protective custody.
DHR established several individualized service plans ("ISPs") for the mother and M.A.H. The fundamental concern of DHR was for the family to obtain stable housing and for the parents to maintain steady employment. The ISPs also required the parents to remain drug-free, to develop parenting skills, and to end the domestic violence in the home. Two of the female children revealed to various counselors and DHR case workers that M.A.H. and his brother ("the uncle") had sexually abused them. One counselor testified that the older female child (approximately 9 years old at the time of trial) explicitly described the variety of sexual contact she was forced to undergo. This child also told the counselor that the mother witnessed one of those episodes and did nothing to stop M.A.H.
A clinical psychologist who examined the mother testified that the mother is mildly mentally retarded. The mother is inclined to rely on and to defer to the judgment of people she views as more powerful than she is; specifically, M.A.H. The male children testified that M.A.H. hit them and that M.A.H. had taken the female children into his bedroom and put a shoe under the door to prevent anyone from entering the room. The children also reported that the mother and M.A.H. had had sexual relations in their presence.
The DHR case worker first assigned to this case testified that the mother has had three different jobs and her longest period of employment was one month. The children had been in protective custody at Seraaj Family Homes. A counselor at Seraaj described the mother's supervised visitation as chaotic. She testified that the mother was unable or unwilling to control the children's behavior and unable to deal with more than one child at a time. She testified that the mother would not discipline the children.
We next conclude that the trial court properly considered viable alternatives to a termination of the mother's parental rights and then rejected those alternatives. The mother gave DHR the name of her mother ("the maternal grandmother") and the name of a cousin as placement alternatives. The DHR case worker testified that placement with the maternal grandmother was not a viable alternative because the Cleburne County DHR had filed "indicated" child abuse and neglect complaints against the maternal grandmother as to these children. The DHR case worker testified that the cousin was tentative in his willingness to take the children. She further testified that she requested that he attend the termination trial, but he failed to appear at trial. DHR also rejected placement with M.A.H.'s father ("the paternal grandfather") as a viable alternative because M.A.H. and the uncle accused by the female children as a perpetrator of sexual abuse both live with him. Because clear and convincing evidence supports a finding that the children are dependent and because there are no viable alternatives to a termination of the mother's parental rights, we affirm the trial court's judgment terminating the mother's parental rights.
AFFIRMED.
Crawley and Thompson, JJ., concur.
Yates, P. J., concurs in the result. *Page 316